Case 2:20-cv-00290   Document 28   Filed on 11/03/21 in TXSD   Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
November 03, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JULIO ESCOLONA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:20-CV-00290 |
| | § | |
| BRYAN COLLIER, *et al.*, | § | |
| | § | |
| Defendants. | § | |

# MEMORANDUM AND RECOMMENDATION TO GRANT-IN-PART AND DENY-IN-PART DEFENDANTS' MOTION TO DISMISS

Plaintiff Julio Escolona, a Texas inmate proceeding *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is a Motion to Dismiss filed by Defendants Bryan Collier[1] and C.F. Hazelwood. (D.E. 25). For the reasons set forth below, it is respectfully recommended that this motion be **GRANTED in part** and **DENIED in part**.

## I. JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

---

[1] This defendant's first name is "Bryan" and not "Ryan." The Clerk is **DIRECTED** to correct the docket in this case to reflect defendant's correct name as Bryan Collier.

1 / 13

## II.     BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is currently housed at the Clemens Unit in Brazoria, Texas. Plaintiff submitted this action when he was previously confined at the Garza West Transfer Facility in Beeville, Texas.

In his original complaint, Plaintiff sued the following defendants: (1) the TDCJ; (2) TDCJ Commissioner Collier; (3) J. Gaona, Senior Warden at the Garza West Transfer Facility; and (4) Chaplain V.A. Crittenden. (D.E. 1). Plaintiff, who is a "Devotee[] of the Santisima Muerte faith," alleged that these defendants violated his First Amendment right to practice his religion.

At the Court's request, Plaintiff filed his First Amended Complaint in which he named the following defendants: (1) the TDCJ; (2) C.F. Hazlewood, the Director of Religious Service; and (3) Collier, the Commissioner of the TDCJ. (D.E. 16). Plaintiff sues the individual defendants in their individual and official capacities. Plaintiff reiterates that he has been denied his First Amendment right to practice his Santisima Muerte faith. He seeks declaratory, injunctive, and punitive damages in the amount of $500,000.

On February 8, 2021, the undersigned issued a Memorandum and Recommendation, recommending that the Court only retain Plaintiff's First Amendment claims against Defendants Collier and Hazlewood (collectively "Defendants") in their individual and official capacities. (D.E. 18). On the same day, the undersigned ordered service of

Plaintiff's First Amended Complaint on Defendants. (D.E. 19). District Judge David S. Morales subsequently adopted the M&R. (D.E. 20).

On March 25, 2021, Defendants filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (D.E. 25). Plaintiff subsequently filed a letter which is construed as his response to the Motion to Dismiss. (D.E. 27).

### III.   PLAINTIFF'S ALLEGATIONS

Plaintiff alleges the following relevant facts in his First Amended Complaint. (D.E. 16). Plaintiff is a "devotee of Santisima Muerte." (D.E. 16-3, p. 1). Santisima Muerte is Plaintiff's deity, his angel, his saint, and his everything. According to Plaintiff, Santisima Muerte "has been worshipped in every culture [and] during every era of human history." (D.E. 16-3, p. 1). Plaintiff further states that Santisima Muerte is "the mother of mystery who discloses herself to all who seek her." (D.E. 16-3, p. 2).

Plaintiff describes that Santisima Muerte may be worshipped both individually and collectively. Personal devotion varies from person to person and may include prayer, alter veneration, and meditation. Collective devotion may include group medication, group alter veneration of Santisima Muerte statues, and the lighting of candles and/or incense. Group assembly for services is strongly recommended as the power of Santisima Muerte is much more effective.

Plaintiff asserts that, pursuant to the TDCJ's unofficial policy and practice, Santisima Muerte is not an approved faith. The TDCJ, through the actions of Defendants as policy makers, has deprived Plaintiff of any accommodations to practice his religious

faith. Plaintiff's various requests for any religious accommodations for his Santisima Muerte faith have been denied or gone unanswered.

## IV. LEGAL STANDARD

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).

Defendants move to dismiss Plaintiff's claims pursuant to Rules 12(b)(1) and 12(b)(6). (D.E. 16). Under Rule 12(b)(1), a case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1887 (2d Cir. 1996)). Lack of subject matter jurisdiction may be found in three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Once the subject matter jurisdiction has been challenged, the party asserting jurisdiction retains the burden of proof that jurisdiction truly does exist. *Id.*

Rule12(b)(6), in turn, provides for dismissal of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its *face*.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

A claim is said to be plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "[A] plaintiff's obligation to prove the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 554-55.

When considering a motion to dismiss, district courts are "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). "When matters outside the pleading are presented with a motion to dismiss under 12(b)(6), a district court has complete discretion to either accept or exclude the evidence." *Gen. Retail Servs. Inc. v. Wireless Toyz Franchise, LLC,* 255 F. App'x (5th Cir. 2007). If "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

V.   **DISCUSSION**

   A.   **Official Capacity Claims**

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998). As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Indeed, the Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ-CID officers and officials acting in their official capacities. *See Oliver*, 276 F.3d at 742 (recognizing that the Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

Defendants contend in their Motion to Dismiss that, to the extent Plaintiff sues them in their official capacities for money damages, those claims are barred by the Eleventh Amendment. (D.E. 25, pp. 4-5). The undersigned agrees. Accordingly, it is respectfully recommended that Defendants' Motion to Dismiss (D.E. 25) be granted on this issue and that Plaintiff's claims for money damages against them in their official capacities be dismissed with prejudice.

### B. Punitive Damages

Defendants contend that Plaintiff is not entitled to punitive damages. (D.E. 25, p. 11). Plaintiff fails to respond to this contention.

In the context of a prisoner civil rights case, "punitive damages may be awarded only when the defendant's conduct "is 'motivated by evil intent' or demonstrates 'reckless or callous indifference' to a person's constitutional rights." *Williams v. Kaufman County,*

6 / 13

352 F.3d 994, 1015 (5th Cir. 2003) (citations omitted). Plaintiff has offered no allegations in his First Amended Complaint to suggest that Defendants were motivated by evil intent or were otherwise recklessly or callously indifferent to Plaintiff's constitutional rights. Accordingly, it is respectfully recommended that Defendants' Motion to Dismiss (D.E. 25) be granted on this issue and that Plaintiff's claims seeking punitive damages against Defendants be dismissed with prejudice.

### C. First Amendment

The First Amendment provides that Congress shall make no law respecting the establishment of religion or prohibiting the free exercise thereof. U.S. Const., amend I. While prisoners retain their First Amendment rights, including the right to free exercise of religion, they only retain those First Amendment rights which "are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Thus, a prisoner's right to practice his religion may be limited where the prison officials establish that there is a legitimate penological objective. *Id.*; *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972) (per curiam); *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

In evaluating the reasonableness of a prison regulation, four factors are considered: (1) whether there is a "valid, rational connection between the prison regulation and the

legitimate governmental interest put forward to justify it," (2) "whether there are alternative means of exercising the right that remain open to prison inmates," (3) "the impact accommodation ... will have on guards and other inmates, and on the allocation of prison resources generally," (4) whether there are "ready alternatives that could fully accommodate[ ] the prisoner's rights at *de minimis* cost to valid penological interests." *Turner*, 482 U.S. at 89–91 (internal citations and quotation marks omitted). While *Turner*'s standard encompasses four factors, the Fifth Circuit has noted that "rationality is the controlling factor, and a court need not weigh each factor equally." *Mayfield v. Texas Dept. of Criminal Justice*, 529 F.3d 599, 607 (5th Cir. 2008).

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983).  It is well established that a prison supervisor cannot be held liable for the misconduct of his or her subordinates.  See *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987).  There is no vicarious or *respondeat superior* liability of supervisors under section 1983.  *Id.* at 303-04.  *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).

"Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). *See also Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).   However, "[m]ere knowledge and acquiescence on a supervisor's part is insufficient to create

supervisory liability under § 1983." *Doe v. Bailey*, No. H-14-2985, 2015 WL 5737666, at *9 (S.D. Tex. Sep. 30, 2015) (citing *Iqbal*, 556 U.S. at 677).

Defendants contend that Plaintiff fails to state a First Amendment claim against them because he never complied with TDCJ procedure to change his faith from Christian non-denominational to Santisima Muerte. (D.E. 25, pp. 5-9). Defendants further contend that they cannot be held liable in their supervisory capacities because Plaintiff has not alleged they were personally involved in the alleged constitutional violation. (D.E. 25, pp. 9-11). Plaintiff responds that he has been attempting to change the religion on his travel card while housed at the West Garza Unit but was unsuccessful in making the change until he reached his current unit. (D.E. 27).

Defendants have attached to their motion certain chaplaincy records showing that Plaintiff has identified his faith to be non-denominational Christian and that he has yet to change the records to reflect a belief in Santisima Muerte. (D.E. 25-1). Such records, however, are outside the pleadings and will be excluded from consideration in connection with this motion to dismiss.

Plaintiff's allegations set forth in his First Amended Complaint reflect his sincere belief in the Santisima Muerte faith. Furthermore, grievance records attached to his First Amended Complaint reflect that, while housed at the West Garza Unit, he attempted to update the chaplaincy records to reflect his true religious beliefs but to no avail. Plaintiff alleges the following in connection with his First Amendment claims: (1) pursuant to the TDCJ's unofficial policy and practice, Santisima Muerte is not an approved faith; (2) the

TDCJ, through the actions of both Defendants as policy makers, has deprived Plaintiff of any accommodations to practice his religious faith; and (3) Plaintiff's various requests for any religious accommodations for his Santisima Muerte faith have been denied or gone unanswered.

Plaintiff's allegations, accepted as true, indicate that Defendants Hazlewood and Collier implemented policies and practices which may have placed a substantial burden on his ability to practice his Santisima Muerte faith. Plaintiff's allegations are sufficient at this early stage in the litigation to warrant further factual and legal development of his First Amendment claims, including whether Defendants' policies and practices impinge Plaintiff's constitutional rights and whether such policies and practices are reasonably related to legitimate penological interests. Accordingly, it is respectfully recommended that Defendants' Motion to Dismiss (D.E. 25) be denied on the issue whether Plaintiff has stated a First Amendment claim against Defendants in their individual and official capacities.

### D.  Qualified Immunity

Defendants further contend that they are entitled to qualified immunity which shields them from constitutional liability in their individual capacities. (D.E. 25, pp. 11-14). The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). "To discharge this burden, the plaintiff must satisfy a two-prong test. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). First, he must claim that the defendant committed a constitutional violation under current law. *Id.* Second, he must claim that the defendant's action was objectively reasonable in light of the law that was clearly established at the time of the complained-of actions. *Id.*

Plaintiff, as discussed above, has stated plausible First Amendment claims against Defendants. Based on the allegations set forth in Plaintiff's First Amended Complaint, the undersigned cannot conclude at this time that Defendants acted objectively reasonable in light of clearly established law. Because Defendants are not entitled to qualified immunity at this time, the undersigned respectfully recommends that Defendants' Motion to Dismiss (D.E. 25) be denied on the issue of qualified immunity.[2]

---

[2] Any decision to deny the Motion to Dismiss on the issue of qualified immunity is without prejudice to the individual defendants reasserting same through an appropriate motion for summary judgment. Indeed, the discovery process may reveal additional facts that entitle Defendants to qualified immunity on Plaintiff's claims. *See Zollicoffer v. Livingston*, 169 F. Supp. 3d 687, 698 (S.D. Tex. 2016).

## IV.     RECOMMENDATION

For the foregoing reasons, the undersigned respectfully recommends that Defendants' Motion to Dismiss (D.E. 25) be **GRANTED in part** and **DENIED in part**. The undersigned respectfully recommends that: (1) Defendants' Motion to Dismiss (D.E. 25) be **GRANTED in part** to the extent that: (a) Plaintiff's claims for money damages against Defendants in their official capacities be **DISMISSED**; and (b) Plaintiff's claims seeking punitive damages against Defendants be **DISMISSED**; and (2) Defendants' Motion to Dismiss (D.E. 25) be **DENIED in part** with respect to Plaintiff's First Amendment claims against Defendants Collier and Hazelwood in their individual and official capacities.

Respectfully submitted on November 3, 2021.

_____
Julie K. Hampton
United States Magistrate Judge

## **NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(*en banc*).